Case under advisement, and here, Babcock v. Wilson Well, I think it's around here. Without me, he's a big guy. Okay, I'll set my papers here somewhere. There we go. Morning. Good morning, ladies. Your Honors, my name is Paul Keenan. I represent the defendant appellants, Kansas City Southern and Norfolk Southern Railway. I respectfully request three minutes for rebuttal. Thank you. Can I ask you something? Have they ever done anything with that regulation where they wanted you to have to write in there, this is a, I don't know, 10709, is that the right number? Well, the STB has been noodling on different regulations. They have not yet passed one. The regulation that used to say, you want to say it's a 1070, that's a historical regulation. I know what it used to do. I just wanted to know if, in order to save the court's work in the future, they were planning on doing that. It actually is not, despite the fact that district courts have had wildly different results, and frankly, I read the opinions with wincing pain at times because I can see how the courts get lost, it really isn't that hard to distinguish. I actually think perhaps there's only one case that actually came out exactly this way, and that's this case. Well, they're all different. And this is a case of first impression for the United States Court of Appeals. It's the first opportunity to provide guidance. Okay. Since there is no regulation right now that requires this label, how do we know this is a 10, I guess this should help you get your argument started, how do we know this is a 10709? Perfect segue. Your Honor, having practiced in this area of the law since 1980, the one thing I've come to learn is that you have to have a sense of history to understand how this works. And a sense of humor. And a sense of humor. Sorry. That's absolutely correct, Your Honor. Having read the potato cases. I started out, my first case was a potato case. Did you? Your Honor, this, once upon a time, let's go back to the mid-'70s, all carriage was common carriage. You used to have filed tariffs. It was all public. You could look up rates, et cetera. Today, common carriage appears in Section 11101. It still exists. It's just you don't have filed tariffs, you have published tariffs. They're on the Internet. They're available. You can call up the railroad and say, what's your published rate for moving a boiler to Newark? And they'll tell you. In addition to that, Your Honor, in 1978, Congress gave the ICC, today the STB, the authority to exempt certain traffic from regulation. And what that meant was until that point in time, you could go to the ICC and challenge the rate where the practice is being unreasonable. And there would be a rate hearing. That still exists today if the particular freight is regulated, such as coal. But in 1978, the ICC slash STB had the authority to exempt traffic. I think the first thing they exempted was boxcar traffic. And then they added many, many more to the exempt side so that it's still common carriage, but it's exempt from regulation. Interestingly enough, the STB still has the authority to revoke that exemption. They decide when they want to exempt it and for how long. And they can take it away. And all the exemption means is that the rates and the practices can't be challenged in front of the ICC, STB, for reasonableness because they've been exempt from being challenged. Then in 1980, the Staggers Rail Act, signed by President Carter, comes into play. And the Staggers Rail Act provides a whole new type of transportation, private contract transportation. And it's very interesting. When you look at Section 10709 today, and this comes back to where I started, the easiest way to distinguish it is 10709 appears under the section rates because that's the first place you look to distinguish a contract from any other move. If the rate is a private confidential rate, it is a 10709 contract. It has to be. There's also Section 10741, which says all your published rates, your common carriage rates, you cannot discriminate. You must offer the same rate for everyone. And right in 10741 it says, except if you have a 10709 contract, because that by its very definition is discriminating, you're providing one rate to one shipper that nobody else can access and nobody else is going to know about. And that's why it's a, you can't, it is discrimination. That's why it's carved out as an exception. In this particular case, it's stipulated. The freight moved under a confidential contract rate. How could this possibly be public common carriage? Let me ask you a question, just so I can wrap my mind around this. Either, if it's not a 10709, then it's got to be an 1101, 11101 contract? It has to be, right. So it's one or the other. It's always one or the other. Okay. There's a nice decision. Where's the stipulation you talked about? Oh, it's a stipulated fact in the appendix that the freight moved under the confidential contract that appears in the record. It has a number, KCS. Oh, under the contract. But I understood you to be saying that it was a stipulated 10709 contract. Oh, no, no, that's the issue. It's a confidential rate contract given to these shippers for this move. Nobody else can get it. Nobody else has access to it. It is a specific rate for a specific route for a specific flight. All right. I mean, your view is that as long as it's a contract with a confidential rate, it is definitely not a contract that is covered by the rules that apply to freight moves by common carry on published rates. And therefore, all these cases we have, including the nice case by Judge Rosenthal, don't apply. But she was going on a contract that was a common carrier. The district courts get confused. Usually Section 10502 confuses the dickens out of the district courts because they read it and they don't realize that that's a type of common carriage that's exempt from regulation. It's very confusing if you don't do this every day. And they get confused with 10502 and 10709, and they have a terrible time trying to reconcile the two. But you have to realize that 10502 is just exempt common carriage. So your argument is that that case was wrong? I thought you would have said that case was right. It's just a totally different kind of case. I'm not sure of the name of the case. Oh, let me find it. There is a case I wanted to bring to the Court's attention called Conrail Canada Malting. It's a district court case out of Eastern District of Pennsylvania. And in that particular case, the Court pointed out that 10709 contracts, as 10709 exists today, don't even have to be in writing because they don't have to be filed. And if they don't have to be filed, they don't have to be in writing, and they certainly don't have to say this is a 10709 contract. But then you get into the requirements for a valid oral contract, do you? Not if you were to have chips and boilers and they got damaged? You probably would under state law. That's a whole other kettle of fish. Well, but if the rate is a private confidential rate, it's going to be determined under Pennsylvania law or whatever state law would apply. Yeah, but here, for example, the argument was initially before Judge Debevor was about the notice. That was your only real argument other than jurisdiction. Notice was improperly given. I mean, if you had an oral contract, where would you find the notice requirement? Well, the notice requirement comes out of the Carmack Amendment. And nothing in Title 49 applies when you're in a contract. As an old district court judge, this occurred to me. Experienced. Experienced, I know. Your boilers, the boilers got injured. I mean, they were injured, and it was your fault. I think it has to be true. Why didn't somebody just write them a check for $25,000 and stipulated damages here if you were liable? I believe they were kidnapped. Unless you want a precedential opinion out of this court on this issue. Well, that would certainly help. But actually, there were other disputes having to do with the claim, whether the notice was proper under the Carmack Amendment. But when I looked at the case, the case was given to me. Well, Judge Debevor has decided that against you, and that was the only disputed fact. I don't know why we're at the – well, anyway. The case was the Schoenman case, and it was an agricultural product. Oh, yes, the case out of the Southern District of Texas. Remember, it was an agricultural product. Yes, that particular decision is one I winced at with pain when I read it because the court was very confused as to what a 10709 or 10502 contract. Okay, but I don't know, not all that confused. So the judge finds it's not a 10709 case? It was just the reasoning. Okay. It was painful to go through. All right. With respect to this particular case, there is an agreement between the parties. Typically, the way these agreements arise is a shipper calls up and wants to move freight. The railroad sales clerk reads them the published rate. The shipper then says, can I have a discounted rate just for me? The railroad says, what else do you have for me? They agree to ship something else on the railroad as well. Fine. Then a confidential rate is sent. They're sent just to that shipper. They're told how they use it, and it's exclusive to them. It is the exact opposite of public carriage. If the parties in this case had intended that this move be public carriage, they would have violated three provisions of the Interstate Commerce Act. And I just don't see any evidence or intent of the parties that they wanted it to be public common carriage. All of the evidence suggests just the opposite. And it's a double-edged sword. That's the problem I have with the district court opinion. How did the district court judge arrive that they wanted it to be common carriage? We're offered no clue. Maybe he made an assumption that if you don't make it clear that it's the other, it is common carriage. Maybe that's how I feel. But why? Every shipper in the railroad has to make a choice. Is it common carriage or contract carriage? What's the evidence of either? Can I ask you about Emerson and Hoskins? I thought that they didn't help me out much because I thought they didn't discuss the issue of how you pick between a CARMAC case and a not CARMAC case. You're correct, Your Honor. It's not of much help. Okay. Not of much relevance to the issues in this particular case. All right. Back to something Judge Rustani asked right off the bat. The STB rulemaking, do we expect something soon on that? No. They actually withdrew the question. So there were submissions, and they decided we're not even going to try. They withdrew it. So we have to just determine whether there was sufficient intent to invoke that 10709 here. Correct. Did the parties conspire to violate three provisions of the common carriage section of the Act? I wouldn't go that far. Well, that's what they did. I mean, if this is common carriage, it violates the Act in three ways. It has 30 days, not 20. It has a rate that's private, not public. It has a rate that discriminates, and you're not allowed to. That's a violation of the law. You can be prosecuted for that. And it has a different provision on liability. Right. It has a different law. I mean, there are multiple provisions here that take it outside common carriage. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Andrew Brown. I'm here on behalf of the plaintiff, Appellee Babcock and Wilcox. This Court, well, as was just alluded to in that argument, we're here today because the appellant, Kansas City Southern, failed to include a seven-word notice provision in its contract. One of the crucial elements of the contract. He says he doesn't have to put it in there because he's not a common carrier contract. It's one of these private things that doesn't require that. Right. Well, we would dispute that, obviously. Okay. So tell me why it's not a 10709 contract. Because it doesn't say that it's a 10709. It doesn't have to. There's no regulation saying it has to. The prior regulation, 396, clearly stated that. Prior. Prior. It's unclear right now what the regulation is. If we disagree with you, you're sunk? Well, not necessarily, Your Honor, because the court below found there was no intention to enter into a 10709 contract, apart from the notice provision. There was also no intent to enter into a CARMAC, or into the CARMAC, for lack of a better word, contract. I mean, no evidence of it. Wasn't the judge a little confused as to whether the prior regulation continued to apply? Wasn't he looking for that 10709 statement? I believe he looked at the showman court, which noted that 10709 contracts normally state that they're made pursuant to 10709. Well, they used to. They used to, and for the most part, they still do. I'd like to get to that in a second. But to answer Judge Barry's question, if we're not – this isn't a 10709 contract. By default, it's CARMAC. If you want to get outside the CARMAC's liability regime, CARMAC is a liability provision, you need to affirmatively enter into a 10709 contract, which, as the court below found, there was no intent for the parties to do so. Can I ask you a question? If we find that this is a 10709 contract, do you concede there would be no subject matter jurisdiction here? If we find it's a 10709 contract? That's a tricky question. I would say – I mean, is there a separate basis for jurisdiction that we don't know about here? There are cases out there that say CARMAC completely preempts all state and federal common law questions or causes of action. So that would put us right back in the federal court. Wait, wait, wait. If it's not a CARMAC, if CARMAC doesn't apply, and that's the question. Does CARMAC apply? If it doesn't apply, are we in state court? If you look solely at 10709, yes, you're in state court. But if you go back to the body of case law that says – It would be state court-wide because it would have to be diversity to be a federal court and you don't have the mountain towns. Right. Our damages here are about 45. I thought you stipulated 25. Just for the purposes of this case. Correct. That's correct, Your Honor. I'd like to respond to a couple of things that Mr. Keenan just mentioned. First of all, the purported violations of the ICA that the parties violated by entering this agreement. He points specifically to 11-101-B, C, and I. And I would just like to note that there was no case law cited as to the violation of these provisions. For example, the 20-day requirement that he spoke to. If you read the provision, I'm pretty sure it was 11-101-B. It states that you have to have a minimum of 20 days. It doesn't say that 30 days is out. It doesn't say it has to be 20 days. So I would just like to point, there was no case law. As far as the STB goes, Mr. Keenan mentioned that the rulemaking provision, or rulemaking action, or whatever you want to call it, was withdrawn. That was a prior rulemaking provision. That was ex parte action number 669. Since the withdrawal of that rulemaking provision, the STB has entered into another rulemaking provision. In order to help assuage all the confusion surrounding 10-709 contracts, they've proposed requiring the rail carriers to send out a disclosure statement to a shipper, letting them know that he's entering into a 10-709 contract. That by entering into a 10-709 contract, you're losing the supervision of the STB. And also, that the shipper has a right to request a common carriage rate. Where does that stand? I spoke with someone from the STB earlier this week, and it hasn't been voted on yet. I take it you're pretty familiar with the procedure. Is there something we can expect soon? I couldn't get a definitive timetable from that. I would like to note that as part of that proceeding, the STB solicited comments from the industry at large. Four of the five major rail carriers in the U.S., Norfolk Southern included, submitted public comments. It's part of the public record. These were submitted after this appeal was filed, so this is new evidence. And in these comments, all four carriers reached the same conclusion. What the STB is trying to do right now goes two steps too far. What the carriers would prefer, what's a more manageable way to make sense of the whole 10-709 situation, is to just include a simple sentence in the contract that the shipper is entering into, notifying the shipper that the contract is made pursuant to 10-709. Out of curiosity, is that a practice now? I mean, we have this kind of controversy before us. Again, you started off with these several words that would, I guess, alleviate this entire appeal. Out of curiosity, is that a practice that people are following now? Well, it's interesting you mention that. Several district courts have noticed that several of the carriers already have such a statement in their contracts. In fact, the American Rock Salt case, which I cite in my brief, it's a 2005 western district in New York. Norfolk Southern is the contracting carrier, and they had a statement saying this contract is made pursuant to 10-709. But the question for us, because there's no such statement here, is whether that's required. I understand that, Your Honor. It's not required by regulation right now. Now, if we were to find in favor of the appellant, can you still go into state court, or are you time-barred there? We're clearly time-barred. You're clearly time-barred. But as I started to answer Judge Chigares' question before, if you were to find that 10-709 affirmative notice statement is required, the district court also said that there was no intent of the parties, and also the district court found that the carriers here offered full CARMEC liability as part of one of the terms of the contract. Numerous courts have stated that it's not necessary to offer full CARMEC liability if you're entering into a 10-709 contract. So it's clear to us why that was in there, because this wasn't a 10-709 contract. The adversary pointed out various ways that your contract is inconsistent. I mean, for instance, were the rates here publicly disclosed? No, right? Well, it's unclear. Admittedly, when we started this case off, it was a notice-of-claim issue. This whole subject matter jurisdiction was after discovery was over, after we had entered into a stipulation. So there wasn't a whole lot of discovery taken on how the rate was arrived at, and the record is very sparse on that point. However, I believe what we have to look at is that the rates – I'm sorry, your question? Were the rates publicly disclosed? The rates were not – it's unclear whether they were publicly disclosed, because when the parties contracted, Babcock called up Kansas City Southern and said they had to move this piece of equipment. A three-page contract, which is in the record, was sent back. If you look at that contract, there's no less than five rate tariffs incorporated into the contract. And whether any of those are actually publicly disclosed or not is unclear, quite simply. Would there be any point in sending this case to our courts' mediation panel? Just to arrive at a number that both sides would agree at? Yes, settle the case. I would suspect that the appellants would be opposed to such an idea. I suppose Mr. Keenan can answer that when he gets back up here. Your Honor, it's mentioned in my brief, but your Honor, the Sampo v. Norfolk Southern case, while the issue was ultimately resolved because the contract there was a 10-502 contract, the exempt common carriage contract, the court there held that the contract was not a 10-709 contract, stating there was a lack of affirmative intent of the parties to enter into the contract. The court also stated, held even, that 10-709 contracts state explicitly that they are made pursuant to 10-709. If there are no further questions, I can just conclude. I'd just like to state that section 10-709's definition of a contract is so unclear that the STB has initiated new rulemaking proceedings to help clarify it. The majority of the courts who looked at this issue have stated that a 10-709 contract must state, or must give notice to the shipper. And also, in entering a 10-709 contract, stakes are high for the shipper, because the shipper is giving up the right to federal jurisdiction, to STB supervision over the rates, and also they're giving up the right to Carmack Amendment's liability regime. The solution is simple. You just require them, the carriers, to put notice in the contract. And this solution is one that is already utilized by several of the carriers. Also, it's a solution that is openly supported by several of the carriers. So, we respectfully submit that the district court was correct and that the decision should be final. Your Honors, thank you. Thank you. Ms. Butler? You know, he's right about this 30-day provision. That's basically, you're giving them something more, a right. You're giving them something more than 20 days. So, you know, your conspiracy argument doesn't work very well there. Except for the fact that the rate, no one else can see the rate, and it's a discriminatory practice. Okay. Because that's the biggest problem. Now, let's focus on this. Your argument is really, this is a private rate. It's obvious this is not an STB-regulated contract. This is a private rate. And so he says, well, it's confusing in the contract as to whether it's this private rate. Because you refer to these common carrier rates. So, respond. That's not correct. It says private confidential contract, and you'll see there's something scribbled out at the bottom. KCS did that. They didn't want this rate to be seen by anyone. Yeah. You're talking, looking at 839? That's correct, Your Honor. Something scribbled out. They did not want the rate seen by anyone because it is a confidential rate. That's it. The scribble out? No, Your Honor. That's the rate. I mean, it's a confidential rate. The issue is whether- That's your evidence of confidentiality, is what I meant to say. Oh, no. It's not available. You see, public rates- Oh, I see. It says confidential up here. Right. Public rates are published. You can get them on the Internet. You can access the website of the railroads. You can call up and ask. Those are all public rates. This was a rate given just to Babcock Wilcox. Now, counsel was correct. Some contracts do recite that they are 10709. Those are typically big contracts drafted between lawyers, et cetera. But the fact of the matter is, while this argument was taking place, there were probably 500 contracts executed by railroads to move the rate right now. And each time, the clerk who's doing it isn't writing a 10709 recitation. He's cutting a special deal, which, by the way, is always discounted. It's always lower than the public rate. So, I mean, they're giving up something, but they really want the discounted rate. To your knowledge, is this issue before any other courts at this time? No. And as I mentioned in the beginning, this is a case of first impression for the Court of Appeals. And district courts have correctly, including the court below, asked for some appellate guidance on the issue. Now, the one final point I wanted to make, to your honors, is that if you read Section 10101 of Title 49, it sets out the United States policy with respect to transportation in following through and interpreting the provisions of Title 49. That section makes it very clear that the intent is to minimize federal regulatory and jurisdictional issues and to maximize free market competition. Despite that congressional mandate in very clear terms, we are here struggling, trying to take the grass fingers of regulation off of a private deal cut between a shipper and a carrier with a private rate. This is the exact opposite of the congressional mandate in 10101. This is what should have been the assumed. Let me try here. Let's just assume for argument's purposes that it's unclear enough to us that we don't really want to try to press it. Is there any point in pending this mediation? I can't honestly say no to that. I figured you would. All right. Any other questions? Thank you very much. Thank you very much. Well argued. We'll take the case on your advice.